FILED

2015 Feb-04  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ALONZO LEE DUKES, JR.,       ) | |
|                 ) | |
| **Plaintiff,**       ) | |
|                 ) | |
| **vs.**       ) | **CASE NO. 2:13-CV-2006-SLB** |
|                 ) | |
| **CAROLYN W. COLVIN, Acting**   ) | |
| **Commissioner of Social Security,**   ) | |
|                 ) | |
| **Defendant.**       ) | |

## MEMORANDUM OPINION

Plaintiff Alonzo Lee Dukes, Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying his application for a period of disability and disability insurance benefits ["DIB"]. Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Mr. Dukes filed an application for a period of disability and DIB on April 13, 2010, alleging disability beginning on July 18, 2005. (Doc. 4-3 at R.31.)[1] His application was denied initially. (*Id*.) Thereafter, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on January 20, 2012, in Birmingham, Alabama. (*Id*.) After the

---

[1]Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as "R.___".

hearing, the ALJ found that Mr. Dukes was able to perform his "past relevant work as a hospital cleaner, a cultured marble products maker, a rental salesman, [and] a loan branch manager." (*Id*. at R.39.)   In light of these findings, the ALJ found that Mr. Dukes was not disabled. (*Id.* at R.31.)

Mr. Dukes then requested the Appeals Council review the ALJ's decision.  (*Id*. at R.25.)  The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision.  Therefore, [it] denied [Mr. Dukes's] request for review." (*Id*. at R.10.)  The ALJ's decision is the final decision of the Commissioner.  (*Id*.)

Following denial of review by the Appeals Council, Mr. Dukes filed an appeal in this court.  (*See generally* doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and

supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB.  *See* 20 C.F.R. § 404.1520(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1).  The

specific steps in the evaluation process are as follows:

### 1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in

"substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations

define "substantial gainful activity" as "work activity that is both substantial and gainful."[2]

20 C.F.R. § 404.1572.  If the claimant is working and that work is substantial gainful activity,

the Commissioner will find that the claimant is not disabled, regardless of the claimant's

medical condition or his age, education, and work experience.  20 C.F.R. § 404.1520(b).

"Under the first step, the claimant has the burden to show that [he] is not currently engaged

---

[2]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that
involves doing significant physical or mental activities.  Your work may be
substantial even if it is done on a part-time basis or if you do less, get paid less,
or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do
for pay or profit.  Work activity is gainful if it is the kind of work usually done
for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking
care of yourself, household tasks, hobbies, therapy, school attendance, club
activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

4

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[3]

The ALJ found that Mr. Dukes had not engaged in substantial gainful activity since July 18, 2005, the alleged onset date, through December 31, 2010, the date last insured. (Doc. 4-3 at R.33.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Dukes had the following severe impairments: "cluster headaches, major depressive disorder, anxiety disorder, and a history of polysubstance abuse in full remission." (Doc. 4-3 at R.33.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that his

6

impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Dukes "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part404, Subpart P, Appendix 1." (Doc. 4-3 at R.33.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [his] past relevant work.  20 C.F.R. § 404.1560(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it.  20 C.F.R. § 404.1560(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R. § 404.1560(e).  The claimant bears the burden of establishing that the impairment prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Dukes had the following RFC:

[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can never climb ladders, ropes, or scaffolds; the claimant should not work around hazardous conditions such as heights or moving machinery; the claimant can

> understand, remember, and carry out both simple and detailed or complex tasks; the claimant can frequently interact with the public on a casual basis and also frequently interact with coworkers and supervisors; the claimant would be able to sustain attention and concentration for at least two hour blocks of time with normal breaks during an eight hour workday; the claimant would be expected to be absent from work one day a month.

(Doc. 4-3 at R.36.)  The ALJ found that Mr. Dukes could perform his past relevant work. (*Id*. at R.39.)

The ALJ did not address Mr. Dukes's other vocational factors.  Nevertheless, the court notes that Mr. Dukes was born in 1966, (*id*. at R.49); therefore, he was a younger individual on the alleged onset date, *see* 20 CFR § 404.1563(c).  He has a college degree.  (Doc. 4-3 at R.50.)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1).   The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f).  If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he in not capable of performing such other work.[4]

Because the ALJ found Mr. Dukes was capable of performing his past relevant work, the ALJ did not address whether other jobs existed in the national economy that an individual of Mr. Dukes's age and with his RFC, education, and work experience could perform.

## B.  MR. DUKES'S ISSUES ON APPEAL

Mr. Dukes argues that the ALJ's decision is not supported by substantial evidence. (Doc. 8 at 5.)  He contends the ALJ erred (1) by failing to present all his limitations in a hypothetical to the vocational expert ["VE"], (doc. 8 at 7), and (2) by discounting the weight accorded his treating physician, Dr. Victor Sung, (*id*. at 7-9).  The court has reviewed the

---

[4]The Eleventh Circuit has noted:

In practice, the burden temporarily shifts at step five to the Commissioner.  *See Jones* [*v. Apfel*], 190 F.3d [1224,] 1228 [(11th Cir. 1999)].  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. *See id*.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  *See id.*  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)(quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)( "The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

entire record before the ALJ, as well as the parties' briefs, and it finds that the Commissioner's decision is due to be affirmed.

### 1. VOCATIONAL EXPERT TESTIMONY

Mr. Dukes contends:

It is a well established principle that the ALJ must present a hypothetical to the vocational expert (VE) that includes all of a claimant's conditions and limitations. *Pendley v Heckler*[,] 767 F.2d 1561 [(11th Cir 1985)]. The VE's testimony does not constitute substantial evidence absent a comprehensive hypothetical. *Wilson v Barnhart*[,] 284 F.3d 1219 [(11th Cir. 2002)].

(Doc. 8 at 7.)

In this case, the ALJ's hypothetical questions to the VE contained each and every limitation she found. (*Compare* doc. 4-3 at 36 *with id*. at 76-77.)

After reviewing Mr. Dukes's past relevant work, the ALJ asked the VE:

Q. . . . If we have an individual of the claimant's same age, education and past work history who has no exertional limitations, but who should never climb ropes, ladders or scaffolds, and not work around hazardous conditions such as heights or moving machinery.  This individual can understand, remember and carry out both simple and detailed or complex tasks.  And can frequently interact with the public on a casual basis, and also frequently interact with coworkers and supervisors.  This individual would be able to sustain attention and concentration for at least two-hour blocks of time with normal breaks during an eight-hour day.  First, would such an individual be able to perform any of his past work?

A.  That person could do the cultured marble maker job.  That person could do the branch manager job.  Could do the sales person job.  Could do the cleaning job.

. . .

Q. . . . Now, if we continue with that same individual and now indicate that they would be absent from work for now we'll say one day a month. Would that individual be able to perform, his past work with the same other restrictions or abilities indicated in the first hypothetical?

A. Yes, ma'am.

(Doc. 4-3 at R.76-77.)  In her decision, the ALJ found Mr. Dukes had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations:"

1.  No climbing of ladders, ropes, or scaffolds;

2.  No working around hazardous conditions such as heights or moving machinery;

3.  No limitation on ability to understand, remember, and carry out both simple and detailed or complex tasks;

4.  Able to frequently  interact with the public on a casual basis;

5.  Able to frequently interact with coworkers and supervisors;

6.  Able to sustain attention and concentration for at least two hour blocks of time with normal breaks during an eight hour workday;  and

7.  Expected to be absent from work one day a month.

(*Id*. at R.36.)  All of these limitations and restrictions were included in the ALJ's hypothetical questions to the VE.  Therefore, the court finds no reversible error.

## 2.  MEDICAL OPINION TESTIMONY

"The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977)).  The ALJ considers medical opinions together with the rest of the

11

relevant evidence received in making her determination.  *See* C.F.R. § 404.1520b. The

regulations provide specific criteria for evaluating medical opinions from acceptable medical

sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4)

consistency; (5) specialization; and (6) "other factors."[5]  *See* C.F. R. § 404.1527(c).  "The

law is clear that, although the opinion of an examining physician is generally entitled to more

weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion

of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*,

660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 1981)(citing 20 C.F.R. § 404.1526).[6]

"[T]he ALJ must state with particularity the weight given to different medical

opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179

(11th Cir. 2011) (citing  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam)).

"An acceptable medical opinion as to disability must contain more than a mere conclusory

---

[5]With regard to "other factors," the regulation states:

When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §  404.1527(c)(6).

[6]Decisions issued by a Unit B panel of the former Fifth Circuit are binding precedent. *See Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

statement that the claimant is disabled.  It must be supported by clinical or laboratory findings." *Oldham*, 660 F.2d at 1084.  Accordingly, with good cause, the ALJ may disregard a treating physician's opinion "but [she] 'must clearly articulate [the] reasons for doing so,'" because "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).

The treating physician's opinions at issue in this case are contained in a two-page document, entitled "Supplemental Questionnaire," completed by Victor Sung, M.D., on October 19, 2010.  (Doc. 4-10 at 492-93.)  Dr. Sung did not elaborate as to the basis for his opinions.  Moreover, although this document purports to be Dr. Sung's opinions regarding Mr. Dukes's psychiatric status, he noted that he did not obtain a psychological evaluation. (*Id.*)  Nevertheless, Dr. Sung noted in the questionnaire that Mr. Dukes had "marked" restrictions of his ability to maintain social functioning, his ability to complete tasks in a timely manner, and his ability to respond appropriately to customary work pressures.  (*Id.* at 492.)  With regard to the side-effects of his medications, Dr. Sung noted that Mr. Dukes "had already had a significant side effect, which is an abscess at the site of one of his pain injections.  All future injections carry risk of pain, infection, bleeding.  The other (potential) medication side effects include sedation, GI upset, tremor, or muscle aches."  (*Id.* at R.493.)

The ALJ gave "little weight" to Dr. Sung's opinions, stating:

>They are inconsistent with the objective evidence of record regarding the severity of the claimant's headaches. Furthermore, Dr. Sung based his opinion on potential side effects of future [injections] as opposed to the actual medical side effects caused by his treatment. Finally, Dr. Sung did not begin performing occipital nerve blocks on the claimant until August 2010, only four months prior to the date last insured. Therefore, Dr. Sung's treating relationship with the claimant cannot be considered as persuasive as a longstanding treating relationship would be.

(Doc. 4-3 at R.38 [footnote added].)

According to the medical records, the court finds that Dr. Sung performed a suboccipital nerve block on Mr. Dukes on May 10, 2010. (Doc. 4-9 at R.276.) Dr. Sung reported that Mr. Dukes tolerated the procedure "well" and was scheduled to return for another nerve block in three months. (*Id*.) The record contains a signed informed-consent form dated August 23, 2010, (*see* doc. 4-11 at 495, 498-99); however, the court has not located any treatment notes or other report regarding this procedure. Moreover, the court has not located any notes indicating other nerve block procedures until May 2011. (*See id*. at R.502, 504.) There is a progress note that indicates Mr. Dukes was diagnosed with "Cellulitis and abscess of the neck" on October 6, 2010 by Dr. Joseph Golden. (*Id*. at R.525.) This appears to be the side effect referenced in Dr. Sung's opinion. (*See* doc. 4-10 at 493.) Although the ALJ incorrectly noted that Dr. Sung's treatment of Mr. Dukes began in August 2010, the treating relationship between Dr. Sung and Mr. Dukes before the date last insured appears to have been limited to two suboccipital nerve blocks with no significant follow-up treatment.

14

Dr. Sung's conclusory opinions regarding Mr. Dukes's restrictions and limitations are simply not supported by his treatment notes or other medical records.  Moreover, the court finds that Dr. Sung's opinions are inconsistent with other evidence regarding Mr. Dukes's limitations, including, but not limited to, evidence of Mr. Dukes's daily activities, the treatment records (or lack thereof) for the period before between May 2010 and December 31, 2010, and the opinion of consulting psychologist, Sally Gordon.  The court finds that the ALJ's decision to accord Dr. Sung's opinions little weight is supported by the record.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 4th day of February, 2015.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE